# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

CHRISTINA FRANCIS and )
COLE FRANCIS, )
       )
         Plaintiffs, )
       )
       v. )      Case No. 23-cv-06019-SRB
       )
WAUSAU HOMES INCORPORATED, et al., )
       )
         Defendants. )

## ORDER

Before the Court is Defendant Wausau Homes Incorporated's ("Defendant") Motion for

Summary Judgment. (Doc. #138.) As set forth below, the motion is GRANTED IN PART and

DENIED IN PART.

## I.    FACTUAL BACKGROUND

The following facts are undisputed or deemed undisputed by the Court. The parties'

briefs (not including exhibits) are approximately 170 pages in length. As such, only those facts

and issues necessary to resolve the pending motion are discussed below, and they are simplified

to the extent possible. The following facts are primarily taken from the parties' briefs and

exhibits, without further quotation or attribution unless otherwise noted. Additional facts

relevant to the parties' arguments are set forth in Section III.[1]

Defendant is a business that factory-builds housing components using a closed wall

panelization approach. Defendant's products are shipped to a jobsite and then erected.

---

[1] The Court need not discuss all of the facts or all of the factual disputes because it is the jury's role to resolve disputed facts. As required by applicable law, disputed facts are viewed in the light most favorable to Plaintiffs, the non-moving parties. This discussion should not be construed as findings of fact. Finally, Defendant argues the Court should not consider an affidavit submitted by Plaintiff Cole Francis in opposition to the pending motion. Defendant argues in part the affidavit is a "sham" because it is inconsistent with prior deposition testimony. The Court rejects this argument and notes that the rulings herein would not be altered even if Defendant's argument was accepted.

Defendant operates through a franchise-like system of independent builders ("Builder") in the Midwest. A Builder has access to a library of Defendant's pre-drawn plans, from which a customer may choose, or a customer may bring plans to the Builder.

If Defendant approves a proposed builder, that Builder enters into a Builder Agreement with Defendant. In part, the Builder Agreement explains the Builders' responsibilities, which includes the right to purchase Defendant's products, use Defendant's trademarks, and represent itself to the public as an authorized Builder of Defendant. At all times relevant to this lawsuit, Defendant did not contract with prospective home owners to build houses in any part of its territory.

Defendant Phillips Builders, LLC ("Phillips Builders") was owned by Defendant Scott Phillips ("Mr. Phillips"). Mr. Phillips applied to be a Builder and filled out an application. Defendant subsequently required Mr. Phillips to attend training organized by Defendant and he received additional training materials. On February 16, 2018, Defendant and Phillips Builders entered into a Builder Agreement. Phillips Builders then operated the Wausau Homes Maryville Studio in Maryville, Missouri (the "Maryville Studio").

In 2019, Plaintiff Cole Francis ("Mr. Francis") and his spouse, Christina Francis ("Mrs. Francis") (collectively, "Plaintiffs") decided to move and build a home in Missouri. Plaintiffs ran an internet search for a custom builder nearby and one result was Wausau Homes Maryville. This result led Plaintiffs to an embedded link which then took them to Defendant's main website, www.wausauhomes.com ("Defendant's website"). Plaintiffs requested further information on Defendant's website through a "Contact Us" tab and began communicating with Mr. Phillips in the summer of 2019. Plaintiffs also reviewed Defendant's website multiple times.

2

According to Plaintiffs, the website stated that Defendant would guarantee a firm price for a home, a firm completion date, and that Defendant vetted their local Builders. Plaintiffs state they reviewed and ultimately relied on various statements on Defendant's website, including:

- "100 of Wausau Homes are fully customizable, with a firm price and a guaranteed move-in date;"

- A "your way" statement providing that "our custom home builders help you design and build your home, so you're only limited by your imagination;"

- A "firm price" statement providing that "your final price is the same, from the start of construction to your move-in date, with no surprises;"

- An "on time" statement providing that "your exact move-in date is guaranteed early in the process, giving you peace of mind;"

- "The Wausau Homes unique building process allows us to deliver custom dream homes on time and on budget – 100% of the time, guaranteed;"

- "The Wausau Homes network of carefully selected builders works tirelessly to deliver custom quality homes on schedule and on budget;"

- "Wausau Homes has a network of highly-qualified new home builder[s];"

- "A firm schedule with an exact move-in date."

(Doc. #142, pp. 51-52.)

In addition to their correspondence, Plaintiffs met with Mr. Phillips on several occasions at the Maryville Studio. On November 10, 2020, Mr. Francis signed a Contract for Custom Home Construction (the "Contract") with Phillips Builders for the construction of a single-family home. The Contract provided a "firm price" of $286,430, and a "firm" completion date of June 1, 2021. (Doc. #142, p. 25.) Plaintiffs believed that Defendant was their builder and general contractor, and that Mr. Phillips worked for or was Defendant's agent.

Plaintiffs' home was not built on time and was not free from defects. Plaintiffs have identified the following defects (among others): improper foundation, improper wall-to-

3

foundation construction, deficient site grading, a sinkhole, and roofing issues.  Plaintiffs state that "[a]fter having spent hundreds of thousands of dollars on what was supposed to be their dream home, Plaintiffs are forced to live in a camper parked on the property—raising their children in the shadow of an unfinished house beset by serious defects."  (Doc. #142, pp. 55-56.)

On February 7, 2023, Plaintiffs filed this lawsuit against Defendant and Phillips Builders. Plaintiffs subsequently joined Mr. Phillips as a defendant.  Plaintiffs' First Amended Complaint (Doc. #58) asserts the following claims against Defendant:  Count I—Violation of the Missouri Merchandising Practices Act ("MMPA"); Count II—Fraudulent Misrepresentation; Count III—Negligent Misrepresentation; Count IV—Negligent Supervision; Count V—Negligence (As Principal); Count VI—Breach of Implied Warranty; and Count XII—Temporary Nuisance.[2]

Defendant now moves for summary judgment on all claims against it under Federal Rule of Civil Procedure 56.  Plaintiffs oppose the motion, and the parties' arguments are addressed below.

## II.    LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted).  If there is a genuine dispute as to

---

[2] The parties appear to agree, and the Court finds, that Missouri substantive law applies to the claims asserted herein.

certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III.  DISCUSSION

### A.  Count I—MMPA

Count I asserts a claim under the MMPA.  The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" Mo. Rev. Stat. § 407.020.1.  To prevail under the MMPA, a plaintiff "must show that (1) they leased or purchased a product or service from defendant; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020."  *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1019 (8th Cir. 2024) (citations and quotation marks omitted) (cleaned up).

"In 2020, the Missouri Legislature amended the MMPA [('2020 Amendments')] to place more stringent requirements on plaintiffs raising MMPA claims[.]"  *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 945 (E.D. Mo. 2023).  A plaintiff must now also show:

> [1] that the person acted as a reasonable consumer would in light of all circumstances; [2] that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and [3] individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

*Id.* (quoting Mo. Rev. Stat. § 407.025.1(2)).  The amendments further provide that "[a] court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act,

or practice alleged to be unlawful would mislead a reasonable consumer." Mo. Rev. Stat.

§ 407.025.1(2).

### 1. MMPA Disclaimer

Defendant argues it is entitled to summary judgment on Plaintiffs' MMPA claim because

"[t]he Contract between Plaintiffs and Phillips Builders is for the construction of a single-family

house" and the Contract includes an express warranty with a disclaimer that precludes a claim

under the MMPA. (Doc. #140, p. 27.)

The MMPA states that it does not apply to the following:

> Any advertisement, merchandise, or transaction in which the merchandise
> consists of a new residence in a transaction in which the buyer is offered and
> accepts in the sale contract an express warranty by the builder . . . and the
> sale contract contains substantially the following disclaimer in all capital
> letters with characters of at least ten-point type stating as follows:
>
> > THIS CONTRACT, MERCHANDISE AND PROPERTY CONVEYED
> > UNDER THIS CONTRACT AND THE TRANSACTION BETWEEN
> > THE SELLER AND BUYER IS EXCLUDED FROM COVERAGE
> > UNDER THE MERCHANDISING PRACTICES ACT, SECTIONS
> > 407.010 TO 407.130, R.S.Mo.

Mo. Rev. Stat. § 407.020.2(3).

Defendant argues the Contract between Plaintiffs and Phillips Builders contains a similar

disclosure, and thus, Plaintiffs' MMPA claim is barred. The Contract between Plaintiffs and

Phillips Builders states that:

> THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES,
> STATUTORY, EXPRESS OR IMPLIED (INCLUDING WITHOUT
> LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY,
> USE, HABITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE)
> AND ANY AND ALL SUCH OTHER WARRANTIES ARE HEREBY
> DISCLAIMED.

(Doc. #140, p. 28.)

6

Upon review, the Court finds that the Contract's disclosure does not bar Plaintiffs' MMPA claim. The disclosure relied upon by Defendant is not substantially similar to the language in the MMPA. To the contrary, the disclosure does not mention the MMPA, does not identify any statutory provision or section under the MMPA, and appears to be a generic boilerplate language. For these reasons, and the additional reasons stated by Plaintiffs, the Court rejects Defendant's argument that the disclosure prevents Plaintiffs from asserting an MMPA claim.

## 2. Deceptive or Unfair Practices

Defendant argues it is entitled to summary judgment on Plaintiffs' MMPA claim because "there is no evidence to show [Defendant] engaged in a deceptive or unfair practice." (Doc. #140, p. 28.) Defendant argues its website "made it abundantly clear that a customer's home would be built by an independent Builder with whom the customer would contract." (Doc. #140, p. 30.) As a result, Defendant argues it would be "clear to a reasonable consumer that the promises of 'your way,' 'firm price,' and 'on time' were to be made by the Wausau Homes Builder in its contract with the customer." (Doc. #140, p. 30.) Defendant further argues that even if the promises on the website could be attributable to it, the failure to meet those promises is not evidence of fraud or deception. Defendant contends that Mr. Phillips and Phillips Builders attempted to build the home but was unable to do so because of health problems, the COVID pandemic, and other obstacles.

Upon review, the Court finds there are disputed issues of material fact on this issue. Based on the evidence presented by Plaintiffs, a reasonable jury could find that Defendant's website contained deceptive statements and constituted an unfair practice. As discussed above, Defendant's website contained various representations, including a "guarantee" of an "exact

7

move-in date," that a home would be constructed "on budget – 100% of the time, guaranteed," and that the Builder would be "highly qualified." (Doc. #142, pp. 51-52.) Plaintiffs' home was not built on time or on budget, and a reasonable jury could find Defendant's statements were deceptive and/or misleading.

As for the "highly qualified" Builder representation, Plaintiffs have presented evidence that a prospective Builder only needs to complete a one-page application. Plaintiffs have presented evidence that Defendant did not require a prospective Builder to have a minimum credit standard or minimum line of credit. Plaintiffs have presented evidence that Defendant did not verify Mr. Phillips' building experience by requiring references or examples of past builds. Based on this evidence, and the additional evidence presented by Plaintiffs, a reasonable jury could find that Defendant's "highly qualified" Builder promise is deceptive and/or misleading.[3] The Court agrees with Plaintiffs that they "presented evidence that [Defendant's] website marketing created the misleading impression that [Defendant] guaranteed firm pricing, timely delivery, and qualified builders." (Doc. #142, p. 61.)

### 3. Reasonable Consumer Requirement

Defendant argues it is entitled to summary judgment because Plaintiffs lack evidence to support the reasonable consumer requirement. In particular, Defendant argues a reasonable consumer would not have entered into a contract with Phillips Builders "based solely on shorthand recollections of [Defendant's] website regarding Builders." (Doc. #140, p. 33.) Defendant argues a reasonable consumer would have read the portion of its website which states Builders are independent of Defendant. Defendant argues a reasonable consumer would have known, based on the Contract between Plaintiffs and Phillips Builders, that Defendant was not a

---

[3] As further discussed below, the Court rejects Defendant's arguments that "highly qualified" is a non-actionable statement of puffery.

party to the Contract.  Defendant emphasizes that the Contract states "Builder is an independent contractor, separate and distinct from [Defendant].  [Defendant] is a supplier of building material for this custom home and is not a party to the Contract."  (Doc. #140, p. 34.)  Defendant acknowledges that "Plaintiffs were certainly damaged by not having their home built," but argues "their damages flow from the breach of contract by Phillips Builders, not from statements on [Defendant's] Website."  (Doc. #140, p. 35.)

Upon review, the Court rejects Defendant's arguments.  Plaintiffs have presented evidence of the following:

> Prior to signing the contract, Plaintiffs reviewed [Defendant's] website on multiple occasions, where [Defendant] . . . represented that its builders were 'highly qualified,' trained through [Defendant's] 'comprehensive training program,' and supported by the Wausau Homes' system. Plaintiffs' understanding was further shaped by repeated in-person interactions with [Mr.] Phillips at the Wausau Homes Maryville design studio. There, Plaintiffs were surrounded by [Defendant's]-branded marketing materials, including signage, brochures, and home design plans—all prominently displaying [Defendant's] logo.  [Mr.] Phillips himself reinforced this impression: he wore [Defendant's] apparel, drove a [Defendant]-branded truck, and corresponded through a [Defendant] email address.  [A reasonable jury could find this evidence] reasonably led Plaintiffs to conclude [Mr.] Phillips was an employee or agent of [Defendant], or at minimum, subject to [Defendant's] oversight and quality controls.  [In addition], the contract . . . was a [Defendant] template agreement. This was not a mere formality—it communicated to Plaintiffs that [Defendant] itself was standing behind the promises made . . . the promises of 'your way,' 'firm price,' and 'on-time,' are . . . indicated throughout the contract.

(Doc. #142, p. 65.)

Based on this evidence, and the additional evidence presented by Plaintiffs, a reasonable jury could find that Plaintiffs acted as reasonable consumers when relying on Defendant's representations. *Bell v. Annie's, Inc.*, 673 F. Supp. 3d 993, 998 n.5 (E.D. Mo. 2023) ("The Missouri Approved Jury Instructions accounts for the MMPA's reasonableness requirement by adding that a jury must find that a plaintiff was acting 'in the exercise of ordinary care.'")

9

(citation omitted). For these reasons, Defendant is not entitled to summary judgment on Plaintiff's MMPA claim.

### B. Counts II and III—Negligent and Fraudulent Misrepresentation

Counts II and III assert a claim for negligent and fraudulent misrepresentation. Under Missouri law, a negligent misrepresentation claim has the following elements:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010).

The elements of a fraudulent misrepresentation claim are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438-39 (8th Cir. 2013) (citing *Renaissance Leasing, LLC*, 322 S.W.3d at 131–32)).

### 1. Puffery

"Missouri common law has long distinguished statements of fact from those of bluster and boast. Generally, vague opinions, commendatory trade talk, sales propaganda, and fortune-telling are [puffery and] immaterial as a matter of law." *SBFO Operator No. 3, LLC v. Onex Corp.*, 101 F.4th 551, 558 (8th Cir. 2024). Conversely, "[i]f a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, i.e., one capable of verification,

the statement is one of fact" and may be actionable.  *American Italian Pasta Co. v. New World Pasta*, 371 F.3d 387, 391 (8th Cir. 2004).

Defendant argues the statements Plaintiffs rely upon are mere puffery and cannot survive summary judgment.  According to Defendants, although its website referred "to a network of 'highly-qualified' Builders . . . phrases such as 'properly vetted' and 'highly qualified'" are puffery.  (Doc. #140, p. 37.)  Defendant argues that "[b]ecause puffery is not false information, it is not actionable under a claim for fraud or negligent misrepresentation."  (Doc. #140, p. 37.)

Upon review, the Court rejects this argument.  As discussed above, Plaintiffs have presented evidence that Defendant's website contained several representations about their Builders and that they relied on those representations.  Among other things, Defendant represented it has a "network of carefully selected builders," its Builders are "highly qualified," and each Builder "goes through a comprehensive training program[.]"  (Doc. #142, p. 51.)  Plaintiffs have also presented evidence that Defendant does not adequately vet or train its Builders, including Mr. Phillips and Phillips Builders.

Based on the circumstances of this case, the Court finds that Defendant's promise of "highly qualified" Builders is not mere puffery.  Instead, that statement "can be reasonably interpreted as a being a factual claim" and challenged by the evidence presented by Plaintiffs.  *American Italian Pasta*, 371 F.3d at 391.  As explained by Plaintiffs, "[a] reasonable jury could conclude these representations are materially misleading [and not puffery] because they convey a guarantee of competence and qualification that [Defendant's] own practices do not substantiate."  (Doc. #142, p. 64.)  The same conclusion is true for Defendant's "firm price" and "on time" representations.

## 2. Future Conduct of Third Parties

Under Missouri law, a fraudulent misrepresentation claim must be based on "a misrepresentation concerning a past or existing fact. One cannot predicate a fraud action upon a statement regarding what independent third parties will do in the future." *Sindecuse v. Katsaros*, 541 F.3d 801, 803 (8th Cir. 2008) (applying Missouri law) (citations omitted). Similarly, "[m]ere predictions about future behavior are typically not sufficient to [prevail on] a claim for negligent misrepresentation." *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 845 (Mo. Ct. App. 2015).

Here, Defendant argues it is entitled to summary judgment on Plaintiff's fraudulent and negligent misrepresentation claims because the alleged representations are non-actionable "statement[s] as to the future conduct of an independent third party." (Doc. #140, p. 37.) Defendant argues in part that the "your way," "on time," and "firm price" promises on its website "makes it clear that the promises . . . are the Builder's promises to be included in the contract between the Builder and the customer." (Doc. #140, p. 37.) Defendant also contends Plaintiffs lack evidence that it "had control over whether Mr. Phillips and Phillips Builders would fulfill their promises to Plaintiffs." (Doc. #140, p. 38.)

Upon review, the Court rejects these arguments. Plaintiffs have presented sufficient evidence that Defendant's "marketing and website materials did not merely predict future performance—they represented that [Defendant] currently operated a vetted network of qualified builders, ensured firm pricing and timely completion, and that ultimately customers could trust [Defendant's] process." (Doc. #142, p. 68.) This evidence would support a finding that "[t]hese representations are statements of present fact about [Defendant], its system, and its builder[.]

12

(Doc. #142, p. 68.)  For these reasons, and the additional reasons stated by Plaintiffs, the Court rejects Defendant's arguments regarding the alleged future conduct of third parties.

### 3. Scienter

Under Missouri law, if an alleged "misrepresentation concerns a statement of intent as to future performance or events, the plaintiff must establish that at the time the statement was made the speaker did not intend to perform the act represented." *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 881 (Mo. banc 2015).  "This is because a state of mind, or intent, is itself an existing fact, the misrepresentation of which can constitute fraud." *Id.* (citations omitted) (cleaned up).  "But if the speaker did not know the future representation was false when it was made, then the representation might be wrong but not fraudulent." *Id.*

Here, Defendant argues summary judgment is warranted because Plaintiffs lack evidence that it "did not intend for Builders to fulfill their promises to their customers." (Doc. #140, p. 38.)  Defendant further argues there is no evidence it did not know Phillips Builders would be unable to satisfy the promises made, and no evidence Phillips Builders and Mr. Phillips did not intend to fulfill their promises to Plaintiffs.

Upon review, the Court finds there are genuine issues of material fact that preclude summary judgment on this issue.  As discussed throughout, Plaintiffs have presented evidence that Defendant did not verify the building experience of its Builders.  Plaintiffs have presented evidence that Defendant knew Mr. Phillips had problems building his first house.  Plaintiffs have presented evidence that Mr. Phillips failed to timely pay back Defendant for those problems. Plaintiffs have presented evidence that Defendant could have terminated its Builders Agreement with Mr. Phillips at that time—and before Plaintiffs entered into their Contract with Phillips Builders—but chose not to.  Based on this and the additional evidence presented by Plaintiffs, a

13

reasonable jury could conclude that "even with mounting evidence of ongoing instability and noncompliance, [Defendant] allowed Phillips to continue to represent [Defendant's] brand and contract with homebuyers, including Plaintiffs." (Doc. #142, p. 70.) Consequently, Defendant's motion for summary judgment based on a lack of scienter is denied.

### 4. Reliance

Defendant argues summary judgment is warranted because Plaintiffs lack evidence showing that they reasonably relied on any alleged misrepresentations. This argument is rejected. For the reasons discussed in this Order, and for the additional reasons stated by Plaintiffs, there is sufficient evidence that Plaintiffs reasonably relied on several representations made by Defendant.

### 5. Reasonable Care to Communicate True Information

To prevail on a negligent misrepresentation claim, a plaintiff must present evidence that the defendant "failed to exercise reasonable care or competence to obtain or communicate true information." *City of St. Joseph v. Southwestern Bell Tele.*, 439 F.3d 468, 478 (8th Cir. 2006) (quoting Missouri case law). Defendant argues in part that its website informed Plaintiffs that a Builder—not Defendant—would provide a firm price and completion date. Defendant further argues it adequately vetted Mr. Phillips and Phillips Builders before allowing it to be a Builder. As a result, Defendant argues summary judgment is warranted because it "was not negligent in obtaining information regarding Mr. Phillips and Phillips Builders and providing Phillips Builders' contact information on its website." (Doc. #140, p. 41.)

Upon review, the Court rejects Defendant's arguments. A plaintiff may prevail on a negligent misrepresentation claim by presenting evidence that the defendant possessed superior knowledge and failed to disclose that knowledge. *See Duncan v. Savannah, LLC*, 637 S.W.3d

14

633, 639 (Mo. Ct. App. 2021). "Whether parties are on equal footing is ordinarily a question for the factfinder." *Veazie-Gallant v. Brown*, 620 S.W.3d 641, 651 (Mo. Ct. App. 2021).

Here, and as discussed throughout, Plaintiffs have presented evidence that Defendant had superior knowledge regarding Mr. Phillips and Phillips Builders and failed to disclose that knowledge. In particular, Defendants' credit check of Mr. Phillips showed a "fair" credit score, a "number of accounts with delinquency," and his "proportion of balances to credit limits [was] too high." (Doc. #142, p. 47.) Plaintiffs did not have access to this information. Additionally, Defendant did not verify Mr. Phillips' building experience by requiring references, checks, or examples of past builds.

Mr. Phillips also had problems constructing his first house as a Builder for Defendant. Defendant required Mr. Phillips to sign an Installment Agreement with Defendant because of his failure to pay Defendant $121,000 for his first house. Mr. Phillips fell behind on the required payments under the Installment Agreement. Defendant could have terminated Mr. Phillips at that time but did not. For all these reasons, Plaintiffs have presented sufficient evidence to avoid summary judgment on their negligent misrepresentation claim.

### C. Count IV—Negligent Supervision; Count V—Negligence (As Principal)

Count IV asserts a claim for negligent supervision and Count V asserts a claim for negligence. "In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002). "To establish a claim for negligent hiring or retention, a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc

1997).[4]  An employer has "a duty to hire a skilled and competent contractor."  *Lonero v. Dillick*, 208 S.W.3d 323, 328 (Mo. Ct. App. 2006).  "[I]f the independent contractor hired is competent, the employer is not liable for negligence despite any lack of care used in the selection."  *Id.*  "Thus, an essential element of a negligent hiring claim, in the context of an independent contractor, is that the employer failed to hire a skilled and competent independent contractor."  *Id.*

For purposes of this claim, the Court assumes that Mr. Phillips and Phillips Builders were independent contractors.[5]  Defendant argues it is entitled to summary judgment on Plaintiff's negligent hiring claim because "[a]ll the evidence shows that Phillips Builders was a competent contractor."  (Doc. #140, p. 45.)  Among other evidence, Defendant emphasizes that "Phillips Builders had built approximately 15 homes prior to becoming an authorized Wausau Homes Builder.  Mr. Phillips had been building houses since the age of 20."  (Doc. #140, p. 45.)

However, as discussed throughout, Plaintiffs have presented conflicting evidence.  Based on that evidence, a reasonable jury could—as described by Plaintiffs—find "warning signs" regarding Mr. Phillips and Phillips Builders at the time of hiring.  A jury could find that Defendant failed to implement objective financial or competency standards for prospective Builders, that Defendant's vetting process was not adequate, that Mr. Phillips' credit was not adequate, and that Defendant failed to verify Mr. Phillips' prior building experience.  Defendant complains that Plaintiffs "simply say [it] should have done more."  (Doc. #148, p. 32.)  A jury is

---

[4] Defendant's initial brief argues that Plaintiffs appear to assert "both negligent hiring and negligent supervision of Phillips Builders."  (Doc. #140, p. 41.)  Plaintiffs' opposition brief similarly appears to argue both causes of action. For the purpose of completeness, the Court considers whether one or both can survive summary judgment.

[5] There are disputed issues of material fact on this issue, as discussed below.

more than capable of considering the evidence and deciding this issue. The parties have presented disputed issues of material fact on this claim and summary judgment is not warranted.

Plaintiffs also assert a negligent supervision claim. Defendant primarily argues summary judgment is warranted on this claim because "[t]he evidence demonstrates that Mr. Phillips and Phillips Builders were not [Defendants'] employees or agents in relation to the construction of Plaintiffs' house." (Doc. #140, p. 43.) Defendant makes this argument because a negligent supervision claim does not apply to independent contractors. *See Lonero v. Dillick*, 208 S.W.3d 323, 328 (Mo. Ct. App. 2006). "An employer has a duty to exercise reasonable care to control his employees, but has no duty to exercise reasonable care over an independent contractor."[6] *Sabaku v. Regency Constr. Co., Inc.*, 392 S.W.3d 494, 499 (Mo. Ct. App. 2012). To prevail on a negligent supervision claim, a plaintiff must thus present evidence of an employer/employee or master/servant relationship between the defendant and the entity or individual it alleged failed to supervise. *Id.*

---

[6] Missouri courts consider various factors to determine "whether one acting for another is a servant or independent contractor." *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. Ct. App. 2000). These factors include:

      (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
      (b) whether or not the one employed is engaged in a distinct occupation or business;
      (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
      (d) the skill required in the particular occupation;
      (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
      (f) the length of time for which the person is employed;
      (g) the method of payment, whether by the time or by the job;
      (h) whether or not the work is a part of the regular business of the employer;
      (i) whether or not the parties believe they are creating the relation of master and servant; and
      (j) whether the principal is or is not in business.

*Id.*

In the franchisee-franchisor content, a plaintiff must present evidence that there was a principal-agent relationship between the franchisor and franchisee. *Hunter v. Ramada Worldwide, Inc.*, 2005 WL 1490053, *6 (E.D. Mo., June 23, 2005).[7] Under Missouri law, an agency relationship has two elements: "(1) the principal consents, expressly or impliedly, to the agent acting on its behalf; and (2) the agent is subject to the principal's control." *Id.* A franchisor must exercise control over the franchisee's "day-to-day operations" for vicarious liability to arise. *Id.* at *8.

Here, Defendant primarily argues that "Mr. Phillips and Phillips Builders were not [Defendant's] employees or agents in relation to the construction of Plaintiffs' house." (Doc. #140, p. 43.) Defendant further contends "[t]he evidence is clear that Mr. Phillips and Phillips Builders were [Defendant's] independent contractors[.]" (Doc. #140, p. 45.) Defendant has presented evidence in support of these arguments. That evidence includes Defendant's Builder Agreement with Phillips Builders which states "The relationship between Builder and [Defendant] under this agreement is that of buyer and seller, and Builder shall have no right and shall not attempt to enter into contracts or commitments in the name of or on behalf of [Defendant] or to bind [Defendant] in any respect whatsoever." (Doc. #140, p. 43.) Based on the evidence presented by Defendant, a reasonable jury could also conclude that Defendant did not supervise Phillips Builders day-to-day activities at a work site, and that Phillips Builders was responsible for securing the labor necessary to construct a home.

However, Plaintiffs have presented sufficient evidence of control to create a principal/agent relationship. The Builder Agreement between Defendant and provided in part that Mr. Phillips had authority to:

---

[7] The parties agree that Defendant operates through a "franchise-like system[.]" (Doc. #142, p. 11.)

> [O]perate a Design Studio for Wausau Homes Products and to promote and
> sell the services and products ("Products") as specified in [Defendant's]
> pricing materials and software programs, as modified by [Defendant] from
> time to time and any specific special products additionally agreed in writing
> by [Defendant].

(Doc. #142, p. 73.) The Builder Agreement further provided that Defendant could terminate the

Builder Agreement if Mr. Phillips altered the standards set by Defendant.

Plaintiffs also presented evidence that Defendant required Mr. Phillips to:

> provide Wausau Homes with an acceptable annual strategic marketing plan
> in a form specified by Wausau Homes; include a requirement in the
> marketing plan that the builder spend a portion of his annual revenues toward
> the promotion and sale of Wausau Homes products; inform Wausau Homes
> of the current list prices, including subcontractor costs; provide Wausau
> Homes with audited financial statements; and contract with subcontractors
> and material suppliers to complete the construction of Wausau Homes home
> products for the Builder's customers.

(Doc. #142, pp. 72-73.)

With respect to advertising and promotion, Mr. Phillips was required to "display only the

Wausau Homes Trademarks and Trade Names, together with Builder's trade name, but Builder

[could] not associate the Wausau Homes Trademarks or Trade Names with any other logo,

trademark or trade name of Builder or any other entity." (Doc. #142, p. 74.) Mr. Phillips was

required to wear attire with Defendant's logo and to display Defendant's sign at the Maryville

Design Studio. Mr. Phillips was required to have Plaintiffs' house plans drawn by Defendant's

approved drawers which were reviewed by Defendant's structural department. Finally,

Defendant required Mr. Phillips to follow Wausau's Field Operations Manual. That Manual

specified how to prepare construction sites, how to erect Defendant's prefabricated components,

and how to complete other work. Based on this and additional evidence, the Court agrees with

Plaintiffs that these facts "would support a conclusion that [defendant] had the right or power to

control and direct the physical conduct" of Phillips, and that he was not an independent

19

contractor[.] *Garret v. Albright*, No. 06-CV-0785, 2008 WL 795621, at *4 (W.D. Mo. Mar. 21, 2008) (internal quotations committed)." (Doc. #142, pp. 74-75.)[8] Under the facts of this case, Defendant is not entitled to summary judgment on Plaintiffs' claim for negligent hiring or negligent supervision.

### D. Counts VI—Breach of Implied Warranty

In Count VI, Plaintiffs assert a breach of implied warranty claim. To prevail on a claim for breach of implied warranty of merchantability under Missouri law, a plaintiff must establish:

> (1) that a merchant sold goods, (2) which were not merchantable at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

*Hope v. Nissan N.A., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011).

Defendant argues it is entitled to summary judgment on this claim because it can only be asserted against "the contractor or developer." (Doc. #140, p. 47.) Because Defendant "was not a party to Plaintiffs' contract with Phillips Builders," Defendant argues "Plaintiffs cannot recover against [Defendant] on their claim for breach of implied warranty." (Doc. #140, p. 47.)

Upon review, and for the reasons discussed herein, the Court rejects Defendant's arguments. The Court agrees with Plaintiffs that:

> [there is sufficient] evidence from which a reasonable jury could find [Defendant] and Scott Phillips operated in a principal-agent relationship, thus sufficient to bind [Defendant] to the Contract and its implied warranties. . . . Missouri and federal courts have established that the determination of whether a principal-agent relationship exists is a question of fact for the trier of fact. *Waterhout v. Associated Dry Goods, Inc.*, 835 F.2d 718, 720 (8th Cir. 1987) ("Normally the existence or nonexistence of a principal-agent relationship is a fact question left to the trier of fact.")

(Doc. #142, p. 78.)

---

[8] The Court further agrees with Plaintiffs that this evidence supports a finding that Defendant had apparent authority over Mr. Phillips.

## E. Count VII—Temporary Nuisance

Count VII asserts a claim for temporary nuisance. Under Missouri law, "[n]uisance requires an interference with the use and enjoyment of land." *McGinnis v. Northland Ready Mix, Inc.*, 344 S.W.3d 804, 809 (Mo. Ct. App. 2011). "To prove a nuisance, a plaintiff must show that the defendant unreasonably uses his or her property such that it substantially impairs the plaintiff's right to peacefully use his or her property." *Id.* "Whether a use is unreasonable to the point of a nuisance depends on factors such as the locality, character of the neighborhood, nature of use, extent of injury, and effect upon enjoyment of life." *Id.* (citation and quotation marks omitted). "A nuisance is temporary if it may be abated[.]" *Id.* at 812. "In a temporary nuisance action, the damages are for personal injuries inflicted upon the person occupying the property." *Hanes v. Continental Grain Co.*, 58 S.W.3d 1, 5 (Mo. Ct. App. 2001).

Defendant argues summary judgment is warranted on this claim in part because this claim "stretches the tort beyond its bounds, since nuisance law involves the conflicting rights of neighboring landowners, which is not present here." (Doc. #140, p. 48.) In response, Plaintiff contends that a temporary nuisance claim may be asserted even if a defendant does not have an ownership or possessory interest in neighboring land.

Upon review, the Court finds that Defendant is entitled to summary judgment on this claim. As explained by Defendant, it does not own or occupy land near Plaintiffs' residence. As such, Plaintiffs cannot show that Defendant "unreasonably use[d] [its] property such that it substantially impairs the plaintiff's right to peacefully use his or her property." *McGinnis*, 344 S.W.3d at 809. Consequently, Defendant is entitled to summary judgment on Count VII.

## IV. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. #138) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as Count VII is DISMISSED WITH PREJUDICE. The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 3, 2025